**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| Jacqueline C. Colyer<br><br>Plaintiff,<br><br>v.<br><br>Planned Parenthood Great Rivers-Missouri f/k/a Planned Parenthood of the St. Louis Region and Southwest Missouri,<br><br>Serve Registered Agent:<br>Capitol Corporate Services, Inc.<br>222 E. Dunklin St., Ste. 102<br>Jefferson City, MO 65101<br>and,<br><br>Planned Parenthood Great Rivers,<br><br>Serve Registered Agent:<br>Capitol Corporate Services, Inc.<br>222 E. Dunklin St., Ste. 102<br>Jefferson City, MO 65101<br><br>Defendants. | ) | Case No.: |

**COMPLAINT**

Plaintiff Jacqueline C. Colyer, by and through her attorneys, Straight Talk Legal, for her Complaint against Defendants Planned Parenthood Great Rivers-Missouri f/k/a Planned Parenthood of the St. Louis Region and Southwest Missouri, and Planned Parenthood Great Rivers, alleges, on knowledge as to her own actions, and otherwise upon information and belief, as follows:

**INTRODUCTION**

1. This is an action for wrongful and retaliatory termination of employment. Plaintiff Jacqueline C. Colyer brings claims against Defendants Planned Parenthood Great Rivers-Missouri and Planned Parenthood Great Rivers (collectively, "Planned Parenthood" or "Defendants") for: (a) common-law wrongful discharge in violation of public policy (whistleblower), a cause of action the Missouri Whistleblower's Protection Act, § 285.575, RSMo, codified but did not abolish and whose statutory cause of action does not reach Plaintiff because, as a supervisory human-resources officer, she is not a statutory "protected person"; (b) disability discrimination, including failure to accommodate, in violation of the Missouri Human Rights Act, RSMo § 213.055; (c) retaliation in violation of the Missouri Human Rights Act, RSMo § 213.070; (d) interference

with rights under the Family and Medical Leave Act, 29 U.S.C. § 2615(a)(1); (e) retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. § 2615(a)(2); (f) disability discrimination, including failure to accommodate, in violation of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12112; and (g) retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12203. Plaintiff asserts her disability-discrimination, failure-to-accommodate, and retaliation claims under both the Missouri Human Rights Act and the Americans with Disabilities Act; to the extent any Missouri Human Rights Act count is found time-barred, the corresponding Americans with Disabilities Act count is independently timely and exhausted, as outlined in the Conditions Precedent section below.

2. Plaintiff seeks damages in a fair and reasonable amount to be proven at trial, in excess of $25,000, together with back pay, front pay, lost benefits, compensatory damages for emotional distress, liquidated damages under the FMLA, punitive damages, prejudgment and post-judgment interest, reasonable attorneys' fees and costs, reinstatement or front pay in lieu thereof, and all other equitable and legal relief to which she is entitled.

## JURISDICTION

3. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which vests the district courts with original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1367, which gives the court supplemental jurisdiction over state claims.

4. This Court has concurrent jurisdiction over Plaintiff's federal claims under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., which may be brought in any state or federal court of competent jurisdiction. 29 U.S.C. § 2617. Additionally, this Court has concurrent jurisdiction over Plaintiff's claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., which may be brought under 42 U.S.C. § 12117.

5. This Court has personal jurisdiction over each Defendant because each conducts business, maintains a principal place of business, and the acts and omissions giving rise to this Complaint occurred in the Eastern District of Missouri.

## VENUE

6. Venue is proper in the Eastern District Court of Missouri pursuant to 28 U.S.C. § 1391 because Defendants employed Plaintiff, and the unlawful employment practices alleged herein occurred in the Eastern District of Missouri.

## PARTIES

7. Plaintiff Jacqueline C. Colyer is a natural person and, at all relevant times, a resident of St. Louis County, Missouri. Colyer was born in 1973 and, as of the filing of this action, was fifty-three (53) years old.

8. Defendant Planned Parenthood Great Rivers-Missouri, formerly known as Planned Parenthood of the St. Louis Region and Southwest Missouri, is a Missouri nonprofit corporation doing business in the State of Missouri with a place of business in the City of Saint Louis. Its name was changed from Planned Parenthood of the St. Louis Region and Southwest Missouri to Planned Parenthood Great Rivers-Missouri by Articles

of Amendment effective July 1, 2024. It may be served through its registered agent, Capitol Corporate Services, Inc., at 222 E. Dunklin St., Ste. 102, Jefferson City, MO 65101.

9. Defendant Planned Parenthood Great Rivers is a nonprofit corporation organized under the laws of the State of Illinois and authorized to transact business in Missouri pursuant to a Certificate of Authority issued by the Missouri Secretary of State on October 17, 2024. Its principal place of business is 4251 Forest Park Avenue, St. Louis, Missouri 63108. It may be served through its registered agent, Capitol Corporate Services, Inc., at 222 E. Dunklin St., Ste. 102, Jefferson City, MO 65101.

10. Planned Parenthood Great Rivers operates the Planned Parenthood facility located in Fairview Heights, Illinois.

11. At all relevant times, Planned Parenthood Great Rivers-Missouri and Planned Parenthood Great Rivers operated as a single integrated enterprise and as joint employers of Plaintiff. Planned Parenthood Great Rivers is listed as the sole member for Planned Parenthood Great Rivers-Missouri.

12. Plaintiff was a W-2 employee of Planned Parenthood Great Rivers.

13. At all relevant times, Defendants were Plaintiff's "employer" within the meaning of the Family and Medical Leave Act, 29 U.S.C. § 2611(4), and the Missouri Human Rights Act, RSMo § 213.010, and employed the requisite number of employees to be covered by each such statute.

14. As reflected in Planned Parenthood Great Rivers-Missouri's publicly filed IRS Forms 990, they employed 312 individuals during 2022, 255 individuals during 2023, and 235 individuals during 2024. Defendants therefore employed well in excess of the fifty or more employees required for coverage under the FMLA and the six or more employees required for coverage under the MHRA, in each case for each working day during at least twenty calendar weeks in the relevant and preceding years.

15. At all relevant times, Plaintiff was an "eligible employee" under the FMLA, 29 U.S.C. § 2611(2), having been employed by Defendants for at least twelve (12) months and for at least 1,250 hours of service during the preceding twelve-month period

16. Plaintiff is and was, at all relevant times, an individual with a disability within the meaning of the Missouri Human Rights Act, RSMo § 213.010(5).

17. Planned Parenthood Great Rivers operates the Planned Parenthood facility located in Fairview Heights, Illinois. Planned Parenthood Great Rivers is identified as Plaintiff's employer on her IRS Form W-2 and was the named respondent in Plaintiff's Charge of Discrimination before the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights, Charge No. 560-2025-02408.

## GENERAL ALLEGATIONS / FACTUAL BACKGROUND

### EMPLOYMENT

18. Defendants hired Plaintiff Jacqueline Colyer as the Vice President of Human Resources on September 26, 2022.

19. Plaintiff received an annual salary of $135,200

20. In March of 2024, Plaintiff sought a raise at a regularly scheduled yearly review to bring her in line with others in the company.

21. Richard Muniz, the interim President/CEO, General Counsel, and Chief Compliance Officer for Defendants, informed her that she did not currently qualify for a raise, but that it would be appropriate after Human Resources' role expanded to include payroll in July 2024.

**ILLEGAL ABORTION**

22. Upon information and belief, before Plaintiff's employment, employees and agents of Defendants performed an illegal abortion at the Fairview Heights facility on a Sunday, after hours, in early 2022.

23. During her employment, Colyer was informed by Defendants' employee Kris Winkleman that an unauthorized abortion had been performed at the Planned Parenthood Fairview Heights, Illinois, location on a Sunday in 2022.

24. Winkleman received this information from her direct report, Jamia Swift, who was called to unlock the door to access the facility.

25. Swift received the call from Colleen McNicolas, M.D., the Chief Medical Officer of PPGRMO, sometime around 7:00 PM on a Sunday in 2022.

26. Upon information and belief, shortly after the call, Swift arrived at the facility and unlocked the door to provide McNicholas with access.

27. Upon information and belief, Swift alleges that McNicholas required access to the facility to perform an abortion on an individual who was around 28 weeks.

28. Winkleman reported this violation to Colyer in early 2024.

**WHISTLEBLOWING REPORT**

29. Defendants' job manual requires that its employees report illegal activity.

30. Defendants use a 3rd party tip-line tool called "ReportIt" to allow employees to submit concerns.

31. Defendants represent and warrant that said reports are confidential and anonymous.

32. Defendants' policies and procedures mandate that when Defendants receive a tip from the ReportIt tool, these tips are assigned to and investigated by the Vice President of Human Resources and General Counsel.

33. Defendants' own whistleblower policy provides that a good-faith whistleblower "is not responsible for investigating," assures that "[a]nyone who reports in good faith is protected," prohibits retaliation, and directs any retaliation complaint to the General Counsel.

34. On July 10, 2024, Colyer anonymously reported the unauthorized abortion through ReportIt, a third-party reporting system, stating that she feared she would be fired if the report were not truly anonymous

and asking that the investigation review the facility's cameras and after-hours key-fob access and determine who admitted the physician, who administered anesthesia, and who locked the building.

35. When the report reached Planned Parenthood, Colyer was immediately removed from it, contrary to Defendants' own Whistleblower Policy.

36. Richard Muniz, the interim President/CEO, General Counsel, and Chief Compliance Officer, allegedly conducted the investigation.

37. On July 31, 2024, a second, independent ReportIt complaint concerning the same incident was anonymously submitted by an unknown party, describing an abortion that had been "provided in the basement of our clinic on a Sunday," in violation of law and late in the woman's pregnancy.

38. The independent report of the same misconduct corroborates that it was real and known within the organization. On that same date, Muniz responded to Colyer's original ReportIt complaint.

**MISTREATMENT FOLLOWING THE REPORT**

39. In July 2024, Human Resources began assuming payroll responsibilities.

40. Per the March 2024 conversation referenced in paragraph 20, *supra*, Plaintiff qualified for a raise.

41. On July 20, 2024, Colyer submitted a Change of Status to VP of Finance Bill Dean for an increase of $28,000 per year to $163,200.

42. This "Change in Status" request was for a raise that was discussed in March 2024 to be implemented after July 1, when Human Resources expanded their role.

43. On July 24, 2024—fourteen days after her July 10 whistleblower report—Colyer received the only written discipline of her employment: a "First written warning" signed by Richard Muniz charging her with "insubordination and dishonesty."

44. This write-up hinged on Plaintiff allegedly not going through the proper channels to secure her raise.

45. This was the only write-up Colyer received during her employment with Planned Parenthood.

**FMLA/ADA**

46. On August 27, 2024, Colyer began to experience foot and back pain from a previous incident.

47. Plaintiff e-mailed Muniz stating that she would likely need leave under the Family and Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA").

48. On August 29, 2024, Muniz responded to the August 27 email stating that he wanted to meet with Colyer to discuss her "work plan."

49. On September 3, 2024, Muniz and Colyer met virtually.

50. At the outset of the call, Muniz stated that he did not want to discuss a work plan and instead wanted to address issues in the department; consistent with that statement, Muniz discussed only issues in Colyer's department, and they did not discuss a work plan.

## CONCERNS REGARDING WHISTLEBLOWING AND PROTECTED STATUS

51. On September 4, 2024, Colyer contacted Sheila Greenbaum, President of the Board, and made her second report about the unauthorized abortion performed in 2022. Colyer also communicated her suspicion of retaliation for needing FMLA and ADA leave, among other concerns.

52. On September 5, 2024, Colyer sent a follow-up email to Greenbaum with her availability after making the whistleblower call to her.

53. On September 11, 2024, Colyer completed and returned her FMLA paperwork.

54. Colyer's serious health condition was documented by a Certification of Health Care Provider completed by Katherine Martin-Bredahl, NP, certifying a period of incapacity beginning September 9, 2024, referrals to podiatry and pain management, continuing treatment, and that Colyer was unable to perform the essential functions of her position during her leave.

55. Plaintiff received an email from Kris Winkleman approving FMLA leave from September 12, 2024, through October 10, 2024.

56. On September 12, 2024, Colyer began FMLA and ADA leave.

57. At Muniz's direction, all of Colyer's Planned Parenthood access was disconnected.

58. Colyer was not notified of her disconnection in advance.

59. Disconnecting access in this manner is not standard procedure for employees on FMLA leave.

60. On September 17, 2024, Muniz sent email communications to Colyer while she was on FMLA leave requesting that Colyer give Muniz access to the company's retirement files.

61. On September 18, 2024, Colyer responded to Muniz's September 17 email, stating she would need to be provided with access to the files to complete the request, and no further communications were had on the subject.

62. On September 17, 2024, Colyer responded to Greenbaum's email, stating: "Prior to my return, would it be possible to discuss specifics of protection under the whistleblower policy? I am very concerned about Richard retaliating."

63. Colyer also asked that Muniz not have sole authority to discipline or terminate her. In that same exchange, Colyer wrote that she "feel[s] scared and in harm's way" because she was "certain Richard is continuing to look for ways to disparage [her] and ultimately terminate [her] employment while [she is] on FMLA."

64. On September 23, 2024, Greenbaum responded to Colyer's September 17 email, stating: "Muniz said there is no way to connect back to an anonymous user of PP's whistleblower line."

65. Greenbaum further relayed that Muniz "offered a full account of the investigation he and the director of compliance undertook," and that she was "satisfied with the thoroughness of the inquiry."

66. Muniz did not include the VP of Human Resources in the investigation, as required by Defendants' policy.

**FMLA Extension**

67. On October 4, 2024, Colyer received an email from Greenbaum stating, "First, how are you feeling? Did the time off allow sufficient healing? Are you back at work? If the answer is in the affirmative, how has your re-entry been? In any case, have a good weekend." This was the last email Colyer received from Greenbaum.

68. On October 6, 2024, Colyer responded to Greenbaum, stating, "Since I provided notice to Richard about needing FMLA, there have been numerous instances that border on retaliation."

69. On October 7, 2024, Colyer sent a text message to Muniz stating, "My medical situation is much more involved than originally diagnosed. My leave is being extended to 12.4 so I can continue the necessary treatment. Progress is slow, but my prognosis is good. Kris will have the FMLA paperwork this week."

70. Muniz responded, "Thanks for letting me know. Get well!"

71. On October 9, 2024, Muniz sent an email regarding Colyer stating, "You are scheduled to return to work tomorrow, unless you supply a certification verifying the need for additional leave. I understand you had planned to submit that paperwork this week to Kris. I don't believe Kris has received the paperwork yet. Can you confirm your plans?"

72. On October 10, 2024, Colyer received an email from Winkleman stating that her FMLA leave was extended to December 9, 2024.

**FMLA INTERFERENCE**

73. On October 11, 2024, Colyer received an email from a third-party administrator ("TPA"), sent to her personal email, stating, "Hi Jacqui. I hope you are doing well. Tom authorized me to forward these documents which need signed to your personal email. Can you please sign and return both of these updated documents for the plan?" The "Tom" referenced in the TPA's email was Thomas Wohlfeil, a Planned Parenthood employee. This pertained to Muniz's September 17 request. Colyer did not respond.

74. On October 23, 2024, Colyer received a second email from Lehmann stating, "Hi Jacqui, Have you had a chance to sign off on these? I can send via Docusign if that works better for you." Colyer forwarded Lehmann's email to Wohlfeil, who was referenced in it, stating, "I am not sure how we got to this point, but I was not asked and did not consent to being contacted by a TPA for a work related item on my personal email. This is interfering with my FMLA."

75. On October 24, 2024, Wohlfeil forwarded Colyer's email to Muniz, who responded, "Jacqui I am sorry you and Chance are going through these issues. I am also sorry about the tone and tenor of your email to Tom, who is simply doing his job. As you may recall, I requested that you add me to the

Principal account on 9/17, to which you agreed to do on 9/18. That was never accomplished. We will figure out another solution. Get well."

**REQUEST FOR REASONABLE ACCOMMODATION**

76. On December 3, 2024, Colyer sent an email to Winkleman submitting her fitness-for-duty paperwork and expressly requesting the reasonable accommodation of flexible work hours to attend physical therapy and follow-up appointments through January 6, 2025, and provided the dates of her upcoming medical appointments.

77. The accompanying fitness-for-duty form released her to return to work on December 5, 2024, with physical therapy twice per week and follow-up appointments.

78. On December 4, 2024, Colyer received an email from Muniz stating, "I understand you have submitted your fitness for duty form. I'm extending your paid leave until Monday. Please report to the office at 10:30am."

79. On December 5, 2024, Colyer forwarded Muniz's December 4 email to Greenbaum, asking whether her employment was being terminated; Greenbaum did not respond.

80. On December 9, 2024, Colyer reported to the office as requested.

81. Muniz terminated her that same day.

82. Muniz only stated the reason for the termination was, "I'm sure you know what's happening. You are not a good fit."

83. Muniz pressured her to sign a separation agreement, including a waiver of claims.

84. Plaintiff, during her entire tenure, was only written up on one occasion.

85. Following December 9, 2024, Colyer's position was immediately filled.

86. On March 24, 2025, Colyer obtained new employment with BJC Healthcare | Encompass Health at an annual salary of $115,000—$48,200 below her fiscal-year 2024–2025 base salary of $163,200. Colyer's acceptance of this lower-paying position mitigated, but did not eliminate, her ongoing wage loss.

## COUNTS / CAUSES OF ACTION

### COUNT I — Common-Law Wrongful Discharge in Violation of Public Policy (Whistleblower) vs. Defendant Planned Parenthood Great Rivers

87. Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

88. Although Missouri is an at-will employment state, the at-will doctrine is subject to a public-policy exception. An at-will employee may not be terminated (1) for refusing to violate the law or any well-

established and clear mandate of public policy or (2) for reporting wrongdoing or violations of law to superiors or public authorities. *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 92 (Mo. 2010).

89. The abortion that Plaintiff reported was illegal and constitutes a violation of the law and clearly mandated public policy.

90. The conduct Colyer reported—an unauthorized abortion at approximately 28 weeks, after the point of viability and outside the facility's operating hours—violated a clear mandate of public policy. Because the procedure occurred at Defendants' Fairview Heights, Illinois facility, Illinois law governs. Under the Illinois Reproductive Health Act, after fetal viability, a health care professional may provide abortion care only if, in the professional's judgment, it is necessary to protect the patient's life or health. 775 ILCS 55/1-25(a); see 775 ILCS 55/1-10 (defining "fetal viability"). An abortion at approximately 28 weeks, outside operating hours, with no indication it was necessary to protect the patient's life or health, was contrary to that Act and to the Illinois Medical Practice Act of 1987, 225 ILCS 60/1 et seq.

Defendants' own General Counsel acknowledged the standard, stating that Illinois law "allows abortions up to 'fetal viability,' which is usually not before 29 weeks."

Evaluated under Missouri law, the conduct likewise contravened the public policy reflected in RSMo § 188.017 and Missouri's abortion restrictions; even if it predated Missouri's June 24, 2022, ban, it remained contrary to public policy as a post-viability, after-hours procedure placing the patient at risk. Whether a reported act violated public policy is a question of law for the Court. *Brovont v. KS-I Med. Servs., P.A.*, 622 S.W.3d 671, 693 (Mo. Ct. App. 2020).

91. Plaintiff reported said violation of the law and clearly mandated public policy to her superiors via the ReportIt system.

92. Colyer reported this serious misconduct to her superiors and to third parties, anonymously through the ReportIt third-party reporting system, and

93. Colyer reported this serious violation directly to Sheila Greenbaum, the President of Defendants' Board of Directors. Colyer then communicated her second report of serious misconduct to Sheila Greenbaum, who reported it to Richard Muniz, the same party who removed her from the anonymous report investigation.

94. Defendants terminated her employment.

95. Defendants were aware of her involvement in the report.

96. Colyer's protected reporting of the unauthorized abortion was a contributing factor in Defendants' decision to terminate her employment. Among other things, Colyer was immediately and improperly removed from the investigation of her own report; Richard Muniz, who removed her, unilaterally closed the investigation with a finding of no misconduct while Colyer was on leave; and Colyer was terminated upon her return. Muniz conducted the investigation by himself, which was against Planned Parenthood's policy.

97. Defendants terminated Plaintiff's employment because she reported the violation of the law and clearly mandated public policy.

98. Whistleblowing needs only be a contributing factor in, and need not be the exclusive cause of, the termination. *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 95 (Mo. 2010); *Brovont v. KS-I Med. Servs., P.A.*, 622 S.W.3d 671, 693 (Mo. Ct. App. 2020).

99. As a direct and proximate result of Defendants' wrongful discharge, Colyer has suffered and continues to suffer lost wages and benefits.

100. As a direct and proximate result of Defendants' wrongful discharge, Colyer has suffered and continues to suffer emotional distress, and other damages.

101. Because Defendants acted willfully, wantonly, and in reckless disregard of Colyer's rights, she is entitled to punitive damages on her common-law wrongful-discharge claim.

WHEREFORE, Plaintiff prays for judgment against Defendant Planned Parenthood Great Rivers in such sum more than $50,000 as will reasonably and fairly compensate Plaintiff for loss and damages, for Plaintiff's costs and expenses incurred herein, and such other and further relief as the Court deems just and proper.

**COUNT II – Violation of the Whistleblower Protection Act RSMo. § 285.575 vs. Defendant Planned Parenthood Great Rivers**

102. Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

103. Although Missouri is an at-will employment state, the at-will doctrine is subject to a public-policy exception. An at-will employee may not be terminated (1) for refusing to violate the law or any well-established and clear mandate of public policy or (2) for reporting wrongdoing or violations of law to superiors or public authorities.

104. The abortion that Plaintiff reported was illegal and constitutes a violation of the law and clearly mandated public policy.

105. The conduct Colyer reported—an unauthorized abortion at approximately 28 weeks, after the point of viability and outside the facility's operating hours—violated a clear mandate of public policy. Because the procedure occurred at Defendants' Fairview Heights, Illinois facility, Illinois law governs. Under the Illinois Reproductive Health Act, after fetal viability, a health care professional may provide abortion care only if, in the professional's judgment, it is necessary to protect the patient's life or health. 775 ILCS 55/1-25(a); see 775 ILCS 55/1-10 (defining "fetal viability"). An abortion at approximately 28 weeks, outside operating hours, with no indication it was necessary to protect the patient's life or health, was contrary to that Act and to the Illinois Medical Practice Act of 1987, 225 ILCS 60/1 et seq.

Defendants' own General Counsel acknowledged the standard, stating that Illinois law "allows abortions up to 'fetal viability,' which is usually not before 29 weeks."

Evaluated under Missouri law, the conduct likewise contravened the public policy reflected in RSMo § 188.017 and Missouri's abortion restrictions; even if it predated Missouri's June 24, 2022, ban, it remained contrary to public policy as a post-viability, after-hours procedure placing the patient at risk. Whether a

reported act violated public policy is a question of law for the Court. *Brovont v. KS-I Med. Servs., P.A.*, 622 S.W.3d 671, 693 (Mo. Ct. App. 2020).

106. Plaintiff reported violation of the law and clearly mandated public policy to her superiors via the ReportIt system.

107. Colyer reported this serious misconduct to her superiors and to third parties, anonymously through the ReportIt third-party reporting system, and

108. Colyer reported this serious violation directly to Sheila Greenbaum, the President of Defendant's Board of Directors. Colyer then communicated her second report of serious misconduct to Sheila Greenbaum, the same party who removed her from the anonymous report investigation.

109. Defendants terminated her employment.

110. Defendants were aware of her involvement in the report.

111. Colyer's protected reporting of the unauthorized abortion was a contributing factor in Defendants' decision to terminate her employment. Among other things, Colyer was immediately and improperly removed from the investigation of her own report; Richard Muniz, who removed her, unilaterally closed the investigation with a finding of no misconduct while Colyer was on leave; and Colyer was terminated upon her return. Muniz conducted the investigation by himself, which was against Planned Parenthood's policy.

112. Defendants terminated Plaintiff's employment because she reported violation of the law and clearly mandated public policy.

113. Whistleblowing needs only be a contributing factor in, and need not be the exclusive cause of, the termination. *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 95 (Mo. 2010); *Brovont v. KS-I Med. Servs., P.A.*, 622 S.W.3d 671, 693 (Mo. Ct. App. 2020).

114. As a direct and proximate result of Defendants' wrongful discharge, Colyer has suffered and continues to suffer lost wages and benefits.

115. As a direct and proximate result of Defendants' wrongful discharge, Colyer has suffered and continues to suffer emotional distress, and other damages.

116. Because Defendants acted willfully, wantonly, and in reckless disregard of Colyer's rights, she is entitled to punitive damages on her common-law wrongful-discharge claim.

WHEREFORE, Plaintiff prays for judgment against Defendant Planned Parenthood Great Rivers in such sum more than $50,000 as will reasonably and fairly compensate Plaintiff for loss and damages, for Plaintiff's costs and expenses incurred herein, and such other and further relief as the Court deems just and proper.

**COUNT III — Disability Discrimination and Failure to Accommodate in Violation of the Missouri Human Rights Act, RSMo § 213.055 vs. Defendant Planned Parenthood Great Rivers**

117. Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

118. At all relevant times, Colyer had a "disability" within the meaning of the MHRA, a physical impairment (foot and back conditions) that substantially limits one or more major life activities and that, with or without reasonable accommodation, does not interfere with performing the essential functions of the job, and/or was regarded by Defendants as having such an impairment. RSMo § 213.010(5).

119. Colyer's foot and back conditions were medically certified as causing a period of incapacity and an inability to perform the essential functions of her position, with referrals to podiatry and pain management.

120. Colyer could perform the essential functions of her position as Vice President of Human Resources, with or without reasonable accommodation. RSMo § 213.010(5).

121. Defendants had notice of Colyer's disability and her need for accommodation, including her August 27, 2024, notice that she would need medical leave and her December 3, 2024, written request for reasonable accommodation of flexible work hours to attend physical therapy and follow-up appointments through January 6, 2025.

122. Defendants' notice was not limited to the fact of FMLA leave. Colyer's Certification of Health Care Provider documented a serious health condition, a period of incapacity, referrals to podiatry and pain management, continuing treatment, and that she was unable to perform the essential functions of her position during her leave.

123. Plaintiff's December 3, 2024, fitness-for-duty documentation released her to return only with ongoing physical therapy twice per week and follow-up medical appointments.

124. Those submissions placed Defendants on notice that Colyer had a physical impairment that substantially limited one or more major life activities, including musculoskeletal function and mobility, and not merely a qualifying condition for leave.

125. Defendants failed to engage in the interactive process, failed to provide a reasonable accommodation, and instead terminated Colyer—disregarding its own Employee Handbook § 3.2 (Disability Accommodation), which establishes a defined accommodation process, recognizes "telecommuting as a form of accommodation for a qualified individual with a disability," and provides that Planned Parenthood "will not discriminate or retaliate against staff members who request or receive an accommodation."

126. Colyer's request for flexible hours to attend physical therapy and follow-up appointments was precisely the modest accommodation the policy contemplates. Yet, Defendants neither initiated the interactive process nor granted it.

127. Defendants discharged and otherwise discriminated against Colyer because of her disability and/or perceived disability, and her disability was the motivating factor in Defendants' decision, in that it actually played a role in and had a determinative influence on the adverse decision. RSMo § 213.010(2), (19).

128. As a direct and proximate result of Defendants' discrimination, Colyer has suffered lost wages and benefits,

129. As a direct and proximate result of Defendants' discrimination, Colyer has suffered emotional distress and other damages,

130. As a direct and proximate result of Defendants' discrimination, Colyer has suffered and is entitled to actual and punitive damages, attorneys' fees, and costs under RSMo § 213.111.

WHEREFORE, Plaintiff prays for judgment against Defendant Planned Parenthood Great Rivers in such sum more than $50,000 as will reasonably and fairly compensate Plaintiff for loss and damages, for Plaintiff's costs and expenses incurred herein, and such other and further relief as the Court deems just and proper.

**COUNT IV — Retaliation in Violation of the Missouri Human Rights Act, RSMo § 213.070 vs. Defendant Planned Parenthood Great Rivers**

131. Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

132. Defendants, by and through their agents, servants, and employees, discriminated against Plaintiff based on her disability-related requests.

133. Plaintiff complained of discrimination based on her disability related leave and accommodation to Defendants' Board President Sheila Greenbaum.

134. Defendants took adverse action against Colyer, including disconnecting her workplace access, ignoring her accommodation request, and terminating her employment on December 9, 2024.

135. Defendants' adverse action was caused, in whole or in part, by Defendant's complaint of discrimination.

136. As a direct and proximate result of Defendants' retaliation, Colyer has suffered lost wages and benefits,

137. As a direct and proximate result of Defendants' retaliation, Colyer has suffered emotional distress and other damages, and

138. As a direct and proximate result of Defendants' retaliation, Colyer is entitled to actual and punitive damages, back pay, front pay or reinstatement, and all other relief available under RSMo § 213.111, together with reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff prays for judgment against Defendant Planned Parenthood Great Rivers in such sum more than $50,000 as will reasonably and fairly compensate Plaintiff for loss and damages, for Plaintiff's costs and expenses incurred herein, and such other and further relief as the Court deems just and proper.

**COUNT V — Interference in Violation of the Family and Medical Leave Act, 29 U.S.C. § 2615(a)(1) vs. Defendant Planned Parenthood Great Rivers**

139. Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

140. The FMLA entitles eligible employees to up to twelve workweeks of leave for a serious health condition that makes the employee unable to perform the functions of her position, and, upon return, to be restored to her prior position.

141. It is unlawful for an employer to interfere with, restrain, or deny the exercise of any right provided under the FMLA.

142. Colyer was an eligible employee entitled to FMLA leave for a serious health condition, and Defendants approved her FMLA leave.

143. Defendants interfered with Colyer's FMLA rights by, among other things:

a. Disconnecting all of her workplace access without noticing the standard procedure for employees on leave.

b. Repeatedly contacting her during leave to perform work, including directing a third-party plan administrator to email her personal account for her signature on the organization's 457(b) plan adoption agreement, service agreement, and corporate-owned life insurance forms, prompting her written objection that "[t]his is interfering with my FMLA"; and/or

c. Failing to restore her at the conclusion of her leave, terminating her instead. That failure contravened Employee Handbook § 7.8 (Family and Medical Leave), entitling a returning employee to "the same job they held when the leave began, or an equivalent position," and barring retaliation against those who take leave.

144. Defendants' interference was connected to Colyer's FMLA leave and prejudiced Colyer, causing lost wages, benefits, and other damages.

145. As a direct and proximate result of Defendants' interference, Colyer is entitled to damages, liquidated damages, equitable relief, attorneys' fees, and costs under 29 U.S.C. § 2617.

WHEREFORE, Plaintiff prays for judgment against Defendant Planned Parenthood Great Rivers in such sum more than $50,000 as will reasonably and fairly compensate Plaintiff for loss and damages, for Plaintiff's costs and expenses incurred herein, and such other and further relief as the Court deems just and proper.

**COUNT VI — Retaliation in Violation of the Family and Medical Leave Act, 29 U.S.C. § 2615(a)(2) vs. Defendant Planned Parenthood Great Rivers**

146. Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

147. Colyer exercised her rights under the FMLA by taking approved FMLA leave from September 12, 2024, through December 9, 2024.

148. Defendants took adverse action against Colyer by terminating her employment on December 9, 2024, her first day back from FMLA leave.

149. Defendants' termination of Plaintiff was caused by Colyer's exercise of rights under the FMLA.

150. As a direct and proximate result of Defendants' retaliation, Colyer is entitled to damages, liquidated damages, equitable relief, attorneys' fees, and costs under 29 U.S.C. § 2617.

WHEREFORE, Plaintiff prays for judgment against Defendant Planned Parenthood Great Rivers in such sum more than $50,000 as will reasonably and fairly compensate Plaintiff for loss and damages, for Plaintiff's costs and expenses incurred herein, and such other and further relief as the Court deems just and proper.

**COUNT VII — Disability Discrimination and Failure to Accommodate in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12112 vs. Defendant Planned Parenthood Great Rivers**

151. Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

152. At all relevant times, Colyer was an individual with a disability within the meaning of 42 U.S.C. § 12102: she had a physical impairment—foot and back conditions—that substantially limited one or more major life activities, including walking, standing, and musculoskeletal function; she had a record of such an impairment; and/or Defendants regarded her as having such an impairment. Her impairment was medically certified as causing a period of incapacity, with referrals to podiatry and pain management.

153. Colyer was a qualified individual who could perform the essential functions of her position as Vice President of Human Resources with or without reasonable accommodation.

154. Defendants had notice of her disability and of her need for accommodation, including her August 27, 2024 notice that she would need medical leave and her December 3, 2024, written request for the reasonable accommodation of flexible work hours to attend physical therapy and follow-up appointments through January 6, 2025.

155. Defendants failed to engage in the interactive process.

156. Defendants failed to provide the requested accommodation.

157. Instead, Defendants terminated her employment.

158. Defendants discharged and otherwise discriminated against Colyer because of her disability and/or perceived disability and failed to make reasonable accommodation for her known limitations.

159. As a direct and proximate result of Defendants' discrimination, Colyer has suffered lost wages and benefits, emotional distress, and other damages, and is entitled to compensatory and punitive damages, equitable relief, reasonable attorneys' fees, and costs under 42 U.S.C. §§ 12117 and 1981a.

WHEREFORE, Plaintiff prays for judgment against Defendant Planned Parenthood Great Rivers in such sum more than $50,000 as will reasonably and fairly compensate Plaintiff for loss and damages, for Plaintiff's costs and expenses incurred herein, and such other and further relief as the Court deems just and proper.

**COUNT VIII — Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12203 vs. Defendant Planned Parenthood Great Rivers**

160. Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

161. The Americans with Disabilities Act makes it unlawful to discriminate against any individual because she has opposed any act or practice made unlawful by the ADA, or because she made a charge or otherwise participated in an investigation or proceeding under the ADA. 42 U.S.C. § 12203(a).

162. Colyer engaged in protected activity, including by requesting disability-related leave and accommodation on August 27, 2024; by requesting the reasonable accommodation of flexible work hours on December 3, 2024; and by opposing conduct she reasonably and in good faith believed to be disability-based discrimination and retaliation, including her September 4, September 17, and October 6, 2024, communications to Board President Sheila Greenbaum.

163. Defendants took adverse employment action against Colyer, including:

a. disconnecting all of her workplace access during her protected leave,

b. failing to accommodate her, and/or

c. terminating her employment on December 9, 2024, her first day back from leave.

164. Defendants' adverse employment actions were caused in whole or in part by Plaintiff's protected activity.

165. As a direct and proximate result of Defendants' retaliation, Colyer has suffered lost wages and benefits, emotional distress, and other damages, and is entitled to compensatory and punitive damages, equitable relief, reasonable attorneys' fees, and costs under 42 U.S.C. §§ 12203 and 12117 and 1981a.

WHEREFORE, Plaintiff prays for judgment against Defendant Planned Parenthood Great Rivers in such sum more than $50,000 as will reasonably and fairly compensate Plaintiff for loss and damages, for Plaintiff's costs and expenses incurred herein, and such other and further relief as the Court deems just and proper.

**COUNT IX — Common-Law Wrongful Discharge in Violation of Public Policy (Whistleblower) vs. Defendant Planned Parenthood Great Rivers-Missouri**

166. Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

167. Although Missouri is an at-will employment state, the at-will doctrine is subject to a public-policy exception. An at-will employee may not be terminated (1) for refusing to violate the law or any well-established and clear mandate of public policy or (2) for reporting wrongdoing or violations of law to superiors or public authorities. *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 92 (Mo. 2010).

168. The abortion that Plaintiff reported was illegal and constitutes a violation of the law and clearly mandated public policy.

169. The conduct Colyer reported—an unauthorized abortion at approximately 28 weeks, after the point of viability and outside the facility's operating hours—violated a clear mandate of public policy. Because the procedure occurred at Defendants' Fairview Heights, Illinois facility, Illinois law governs. Under the Illinois Reproductive Health Act, after fetal viability, a health care professional may provide abortion care only if, in the professional's judgment, it is necessary to protect the patient's life or health. 775 ILCS 55/1-25(a); see 775 ILCS 55/1-10 (defining "fetal viability"). An abortion at approximately 28 weeks, outside operating hours, with no indication it was necessary to protect the patient's life or health, was contrary to that Act and to the Illinois Medical Practice Act of 1987, 225 ILCS 60/1 et seq.

Defendants' own General Counsel acknowledged the standard, stating that Illinois law "allows abortions up to 'fetal viability,' which is usually not before 29 weeks."

Evaluated under Missouri law, the conduct likewise contravened the public policy reflected in RSMo § 188.017 and Missouri's abortion restrictions; even if it predated Missouri's June 24, 2022, ban, it remained contrary to public policy as a post-viability, after-hours procedure placing the patient at risk. Whether a reported act violated public policy is a question of law for the Court. *Brovont v. KS-I Med. Servs., P.A.*, 622 S.W.3d 671, 693 (Mo. Ct. App. 2020).

170. Plaintiff reported said violation of the law and clearly mandated public policy to her superiors via the ReportIt system.

171. Colyer reported this serious misconduct to her superiors and to third parties, anonymously through the ReportIt third-party reporting system, and

172. Colyer reported this serious violation directly to Sheila Greenbaum, the President of Defendants' Board of Directors. Colyer then communicated her second report of serious misconduct to Sheila Greenbaum, who reported it to Richard Muniz, the same party who removed her from the anonymous report investigation.

173. Defendants terminated her employment.

174. Defendants were aware of her involvement in the report.

175. Colyer's protected reporting of the unauthorized abortion was a contributing factor in Defendants' decision to terminate her employment. Among other things, Colyer was immediately and improperly removed from the investigation of her own report; Richard Muniz, who removed her, unilaterally closed the investigation with a finding of no misconduct while Colyer was on leave; and Colyer was terminated upon her return. Muniz conducted the investigation by himself, which was against Planned Parenthood's policy.

176. Defendants terminated Plaintiff's employment because she reported the violation of the law and clearly mandated public policy.

177. Whistleblowing needs only be a contributing factor in, and need not be the exclusive cause of, the termination. *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 95 (Mo. 2010); *Brovont v. KS-I Med. Servs., P.A.*, 622 S.W.3d 671, 693 (Mo. Ct. App. 2020).

178. As a direct and proximate result of Defendants' wrongful discharge, Colyer has suffered and continues to suffer lost wages and benefits.

179. As a direct and proximate result of Defendants' wrongful discharge, Colyer has suffered and continues to suffer emotional distress, and other damages.

180. Because Defendants acted willfully, wantonly, and in reckless disregard of Colyer's rights, she is entitled to punitive damages on her common-law wrongful-discharge claim.

WHEREFORE, Plaintiff prays for judgment against Defendant Planned Parenthood Great Rivers-Missouri in such sum more than $50,000 as will reasonably and fairly compensate Plaintiff for loss and damages, for Plaintiff's costs and expenses incurred herein, and such other and further relief as the Court deems just and proper.

**COUNT X – Violation of the Whistleblower Protection Act RSMo. § 285.575 vs. Defendant Planned Parenthood Great Rivers-Missouri**

181. Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

182. Although Missouri is an at-will employment state, the at-will doctrine is subject to a public-policy exception. An at-will employee may not be terminated (1) for refusing to violate the law or any well-established and clear mandate of public policy or (2) for reporting wrongdoing or violations of law to superiors or public authorities.

183. The abortion that Plaintiff reported was illegal and constitutes a violation of the law and clearly mandated public policy.

184. The conduct Colyer reported—an unauthorized abortion at approximately 28 weeks, after the point of viability and outside the facility's operating hours—violated a clear mandate of public policy. Because the procedure occurred at Defendants' Fairview Heights, Illinois facility, Illinois law governs. Under the Illinois Reproductive Health Act, after fetal viability, a health care professional may provide abortion care only if, in the professional's judgment, it is necessary to protect the patient's life or health. 775 ILCS 55/1-25(a); see 775 ILCS 55/1-10 (defining "fetal viability"). An abortion at approximately 28 weeks, outside operating hours, with no indication it was necessary to protect the patient's life or health, was contrary to that Act and to the Illinois Medical Practice Act of 1987, 225 ILCS 60/1 et seq.

Defendants' own General Counsel acknowledged the standard, stating that Illinois law "allows abortions up to 'fetal viability,' which is usually not before 29 weeks."

Evaluated under Missouri law, the conduct likewise contravened the public policy reflected in RSMo § 188.017 and Missouri's abortion restrictions; even if it predated Missouri's June 24, 2022, ban, it remained contrary to public policy as a post-viability, after-hours procedure placing the patient at risk. Whether a reported act violated public policy is a question of law for the Court. *Brovont v. KS-I Med. Servs., P.A.*, 622 S.W.3d 671, 693 (Mo. Ct. App. 2020).

185. Plaintiff reported violation of the law and clearly mandated public policy to her superiors via the ReportIt system.

186. Colyer reported this serious misconduct to her superiors and to third parties, anonymously through the ReportIt third-party reporting system, and

187. Colyer reported this serious violation directly to Sheila Greenbaum, the President of Defendant's Board of Directors. Colyer then communicated her second report of serious misconduct to Sheila Greenbaum, the same party who removed her from the anonymous report investigation.

188. Defendants terminated her employment.

189. Defendants were aware of her involvement in the report.

190. Colyer's protected reporting of the unauthorized abortion was a contributing factor in Defendants' decision to terminate her employment. Among other things, Colyer was immediately and improperly removed from the investigation of her own report; Richard Muniz, who removed her, unilaterally closed the investigation with a finding of no misconduct while Colyer was on leave; and Colyer was terminated upon her return. Muniz conducted the investigation by himself, which was against Planned Parenthood's policy.

191. Defendants terminated Plaintiff's employment because she reported violation of the law and clearly mandated public policy.

192. Whistleblowing needs only be a contributing factor in, and need not be the exclusive cause of, the termination. *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 95 (Mo. 2010); *Brovont v. KS-I Med. Servs., P.A.*, 622 S.W.3d 671, 693 (Mo. Ct. App. 2020).

193. As a direct and proximate result of Defendants' wrongful discharge, Colyer has suffered and continues to suffer lost wages and benefits.

194. As a direct and proximate result of Defendants' wrongful discharge, Colyer has suffered and continues to suffer emotional distress, and other damages.

195. Because Defendants acted willfully, wantonly, and in reckless disregard of Colyer's rights, she is entitled to punitive damages on her common-law wrongful-discharge claim.

WHEREFORE, Plaintiff prays for judgment against Defendant Planned Parenthood Great Rivers-Missouri in such sum more than $50,000 as will reasonably and fairly compensate Plaintiff for loss and damages, for Plaintiff's costs and expenses incurred herein, and such other and further relief as the Court deems just and proper.

**COUNT XI — Disability Discrimination and Failure to Accommodate in Violation of the Missouri Human Rights Act, RSMo § 213.055 vs. Defendant Planned Parenthood Great Rivers-Missouri**

196. Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

197. At all relevant times, Colyer had a "disability" within the meaning of the MHRA, a physical impairment (foot and back conditions) that substantially limits one or more major life activities and that, with or without reasonable accommodation, does not interfere with performing the essential functions of the job, and/or was regarded by Defendants as having such an impairment. RSMo § 213.010(5).

198. Colyer's foot and back conditions were medically certified as causing a period of incapacity and an inability to perform the essential functions of her position, with referrals to podiatry and pain management.

199. Colyer could perform the essential functions of her position as Vice President of Human Resources, with or without reasonable accommodation. RSMo § 213.010(5).

200. Defendants had notice of Colyer's disability and her need for accommodation, including her August 27, 2024, notice that she would need medical leave and her December 3, 2024, written request for reasonable accommodation of flexible work hours to attend physical therapy and follow-up appointments through January 6, 2025.

201. Defendants' notice was not limited to the fact of FMLA leave. Colyer's Certification of Health Care Provider documented a serious health condition, a period of incapacity, referrals to podiatry and pain management, continuing treatment, and that she was unable to perform the essential functions of her position during her leave.

202. Plaintiff's December 3, 2024, fitness-for-duty documentation released her to return only with ongoing physical therapy twice per week and follow-up medical appointments.

203. Those submissions placed Defendants on notice that Colyer had a physical impairment that substantially limited one or more major life activities, including musculoskeletal function and mobility, and not merely a qualifying condition for leave.

204. Defendants failed to engage in the interactive process, failed to provide a reasonable accommodation, and instead terminated Colyer—disregarding its own Employee Handbook § 3.2 (Disability Accommodation), which establishes a defined accommodation process, recognizes "telecommuting as a form of accommodation for a qualified individual with a disability," and provides that Planned Parenthood "will not discriminate or retaliate against staff members who request or receive an accommodation."

205. Colyer's request for flexible hours to attend physical therapy and follow-up appointments was precisely the modest accommodation the policy contemplates. Yet, Defendants neither initiated the interactive process nor granted it.

206. Defendants discharged and otherwise discriminated against Colyer because of her disability and/or perceived disability, and her disability was the motivating factor in Defendants' decision, in that it actually played a role in and had a determinative influence on the adverse decision. RSMo § 213.010(2), (19).

207. As a direct and proximate result of Defendants' discrimination, Colyer has suffered lost wages and benefits,

208. As a direct and proximate result of Defendants' discrimination, Colyer has suffered emotional distress and other damages,

209. As a direct and proximate result of Defendants' discrimination, Colyer has suffered and is entitled to actual and punitive damages, attorneys' fees, and costs under RSMo § 213.111.

WHEREFORE, Plaintiff prays for judgment against Defendant Planned Parenthood Great Rivers-Missouri in such sum more than $50,000 as will reasonably and fairly compensate Plaintiff for loss and damages, for Plaintiff's costs and expenses incurred herein, and such other and further relief as the Court deems just and proper.

**COUNT XII — Retaliation in Violation of the Missouri Human Rights Act, RSMo § 213.070 vs. Defendant Planned Parenthood Great Rivers-Missouri**

210. Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

211. Defendants, by and through their agents, servants, and employees, discriminated against Plaintiff based on her disability-related requests.

212. Plaintiff complained of discrimination based on her disability related leave and accommodation to Defendants' Board President Sheila Greenbaum.

213. Defendants took adverse action against Colyer, including disconnecting her workplace access, ignoring her accommodation request, and terminating her employment on December 9, 2024.

214. Defendants' adverse action was caused, in whole or in part, by Defendant's complaint of discrimination.

215. As a direct and proximate result of Defendants' retaliation, Colyer has suffered lost wages and benefits,

216. As a direct and proximate result of Defendants' retaliation, Colyer has suffered emotional distress and other damages, and

217. As a direct and proximate result of Defendants' retaliation, Colyer is entitled to actual and punitive damages, back pay, front pay or reinstatement, and all other relief available under RSMo § 213.111, together with reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff prays for judgment against Defendant Planned Parenthood Great Rivers-Missouri in such sum more than $50,000 as will reasonably and fairly compensate Plaintiff for loss and damages, for Plaintiff's costs and expenses incurred herein, and such other and further relief as the Court deems just and proper.

**COUNT XIII — Interference in Violation of the Family and Medical Leave Act, 29 U.S.C. § 2615(a)(1) vs. Defendant Planned Parenthood Great Rivers-Missouri**

218. Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

219. The FMLA entitles eligible employees to up to twelve workweeks of leave for a serious health condition that makes the employee unable to perform the functions of her position, and, upon return, to be restored to her prior position.

220. It is unlawful for an employer to interfere with, restrain, or deny the exercise of any right provided under the FMLA.

221. Colyer was an eligible employee entitled to FMLA leave for a serious health condition, and Defendants approved her FMLA leave.

222. Defendants interfered with Colyer's FMLA rights by, among other things:

a. Disconnecting all of her workplace access without noticing the standard procedure for employees on leave.

b. Repeatedly contacting her during leave to perform work, including directing a third-party plan administrator to email her personal account for her signature on the organization's 457(b) plan adoption agreement, service agreement, and corporate-owned life insurance forms, prompting her written objection that "[t]his is interfering with my FMLA"; and/or

c. Failing to restore her at the conclusion of her leave, terminating her instead. That failure contravened Employee Handbook § 7.8 (Family and Medical Leave), entitling a returning employee to "the same job they held when the leave began, or an equivalent position," and barring retaliation against those who take leave.

223. Defendants' interference was connected to Colyer's FMLA leave and prejudiced Colyer, causing lost wages, benefits, and other damages.

224. As a direct and proximate result of Defendants' interference, Colyer is entitled to damages, liquidated damages, equitable relief, attorneys' fees, and costs under 29 U.S.C. § 2617.

WHEREFORE, Plaintiff prays for judgment against Defendant Planned Parenthood Great Rivers-Missouri in such sum more than $50,000 as will reasonably and fairly compensate Plaintiff for loss and damages, for Plaintiff's costs and expenses incurred herein, and such other and further relief as the Court deems just and proper.

**COUNT XIV — Retaliation in Violation of the Family and Medical Leave Act, 29 U.S.C. § 2615(a)(2) vs. Defendant Planned Parenthood Great Rivers-Missouri**

225. Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

226. Colyer exercised her rights under the FMLA by taking approved FMLA leave from September 12, 2024, through December 9, 2024.

227. Defendants took adverse action against Colyer by terminating her employment on December 9, 2024, her first day back from FMLA leave.

228. Defendants' termination of Plaintiff was caused by Colyer's exercise of rights under the FMLA.

229. As a direct and proximate result of Defendants' retaliation, Colyer is entitled to damages, liquidated damages, equitable relief, attorneys' fees, and costs under 29 U.S.C. § 2617.

WHEREFORE, Plaintiff prays for judgment against Defendant Planned Parenthood Great Rivers-Missouri in such sum more than $50,000 as will reasonably and fairly compensate Plaintiff for loss and damages, for Plaintiff's costs and expenses incurred herein, and such other and further relief as the Court deems just and proper.

**COUNT XV — Disability Discrimination and Failure to Accommodate in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12112 vs. Defendant Planned Parenthood Great Rivers-Missouri**

230. Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

231. At all relevant times, Colyer was an individual with a disability within the meaning of 42 U.S.C. § 12102: she had a physical impairment—foot and back conditions—that substantially limited one or more major life activities, including walking, standing, and musculoskeletal function; she had a record of such an impairment; and/or Defendants regarded her as having such an impairment. Her impairment was medically certified as causing a period of incapacity, with referrals to podiatry and pain management.

232. Colyer was a qualified individual who could perform the essential functions of her position as Vice President of Human Resources with or without reasonable accommodation.

233. Defendants had notice of her disability and of her need for accommodation, including her August 27, 2024, notice that she would need medical leave and her December 3, 2024, written request for the reasonable accommodation of flexible work hours to attend physical therapy and follow-up appointments through January 6, 2025.

234. Defendants failed to engage in the interactive process.

235. Defendants failed to provide the requested accommodation.

236. Instead, Defendants terminated her employment.

237. Defendants discharged and otherwise discriminated against Colyer because of her disability and/or perceived disability and failed to make reasonable accommodation for her known limitations.

238. As a direct and proximate result of Defendants' discrimination, Colyer has suffered lost wages and benefits, emotional distress, and other damages, and is entitled to compensatory and punitive damages, equitable relief, reasonable attorneys' fees, and costs under 42 U.S.C. §§ 12117 and 1981a.

WHEREFORE, Plaintiff prays for judgment against Defendant Planned Parenthood Great Rivers-Missouri in such sum more than $50,000 as will reasonably and fairly compensate Plaintiff for loss and damages, for Plaintiff's costs and expenses incurred herein, and such other and further relief as the Court deems just and proper.

**COUNT XVI — Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12203 vs. Defendant Planned Parenthood Great Rivers-Missouri**

239. Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

240. The Americans with Disabilities Act makes it unlawful to discriminate against any individual because she has opposed any act or practice made unlawful by the ADA, or because she made a charge or otherwise participated in an investigation or proceeding under the ADA. 42 U.S.C. § 12203(a).

241. Colyer engaged in protected activity, including by requesting disability-related leave and accommodation on August 27, 2024; by requesting the reasonable accommodation of flexible work hours on December 3, 2024; and by opposing conduct she reasonably and in good faith believed to be disability-based discrimination and retaliation, including her September 4, September 17, and October 6, 2024, communications to Board President Sheila Greenbaum.

242. Defendants took adverse employment action against Colyer, including:

a. disconnecting all of her workplace access during her protected leave,

b. failing to accommodate her, and/or

c. terminating her employment on December 9, 2024, her first day back from leave.

243. Defendants' adverse employment actions were caused in whole or in part by Plaintiff's protected activity.

244. As a direct and proximate result of Defendants' retaliation, Colyer has suffered lost wages and benefits, emotional distress, and other damages, and is entitled to compensatory and punitive damages, equitable relief, reasonable attorneys' fees, and costs under 42 U.S.C. §§ 12203 and 12117 and 1981a.

WHEREFORE, Plaintiff prays for judgment against Defendant Planned Parenthood Great Rivers-Missouri in such sum more than $50,000 as will reasonably and fairly compensate Plaintiff for loss and damages, for Plaintiff's costs and expenses incurred herein, and such other and further relief as the Court deems just and proper.

**CONDITIONS PRECEDENT**

245. All conditions precedent have been satisfied.

246. Plaintiff dual-filed a Charge of Discrimination with the EEOC and the Missouri Commission on Human Rights, Charge No. 560-2025-02408, on June 13, 2025, alleging disability discrimination and retaliation between August 26, 2024, and December 9, 2024.

247. The Charge named Planned Parenthood Great Rivers as respondent and asserted disability discrimination, failure to accommodate, and retaliation under Title I of the Americans with Disabilities Act; Plaintiff's ADA claims in Counts VII and VIII are therefore administratively exhausted and are timely, having been filed within ninety (90) days of the Notice of Right to Sue.

248. The EEOC issued a Notice of Right to Sue on May 25, 2026, and this action is filed within ninety (90) days of receipt. The Missouri Commission issued a Right to Sue on August 12, 2026, and this action is filed within ninety (90) days of receipt.

249. Plaintiff's common-law whistleblower and FMLA claims require no administrative exhaustion and are timely under their own longer limitation's periods.

250. The MHRA charge was timely filed within one hundred eighty (180) days of the last acts of discrimination and retaliation, including the coercive severance ultimatum extending past December 9, 2024, RSMo § 213.075.1. This action is filed within ninety (90) days of the Commission's notice and within two (2) years of accrual, RSMo § 213.111.1.

## JURY DEMAND

251. Plaintiff demands a trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jacqueline C. Colyer respectfully requests that this Court enter judgment in her favor and against Defendants, and award the following relief:

a. Reinstatement to her former position, or front pay in lieu of reinstatement.

b. Back pay and lost benefits, with prejudgment interest.

c. Compensatory damages, including damages for emotional distress, humiliation, and mental anguish.

d. Liquidated damages under the FMLA.

e. Punitive damages under the Missouri Human Rights Act and the common law.

f. Reasonable attorneys' fees, expert fees, and costs of suit.

g. Post-judgment interest; and

h. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

**STRAIGHT TALK LEGAL**

By: /s/Trevion McGhaw
Trevion McGhaw # 78101MO
11775 Borman Dr., Suite 216
Saint Louis, Missouri 63146
314-325-2450
Trevion@straight-talk-legal.com

**BRAND INJURY LAW, LLC**
By: */s/ Zachary M. Brand, Esq.*
Zachary M. Brand, Esq. #73639MO
826 Union Blvd., Ste 303
Saint Louis, MO 63108
314-724-1336
zbrand@brandinjurylaw.com
*Attorneys for Plaintiff Jacqueline C. Colyer*